## WHY CORPORATION v. SUPER IRONER CORPORATION.

### No. 9007.

Circuit Court of Appeals, Sixth Circuit.

June 3, 1942.

Clarence B. Des Jardins, of Cincinnati, Ohio (Robert E. Woodhams, of Kalamazoo, Mich., and Church & Church, of Washington D. C., on the brief), for appellant.

George L. Wilkinson, of Chicago, Ill. (Eugene M. Giles, of Chicago, Ill., and Wm. Cyrus Rice, of Grand Rapids, Mich., on the brief), for the appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Appellant, claiming ownership of Patent No. 1,624,698, brought an infringement suit against appellee. The validity of the patent and the manufacture and sale by appellee of machines embodying the invention were admitted; but, defensively, appellee asserted its own title to the patent. The district court sustained the defense and dismissed appellant's action on the merits. While laches was also set up and upheld, that issue, though properly adjudged in the district court for the aid of the reviewing court, is immaterial here; should it be determined that the legal title to the patent was correctly held to have vested in appellee prior to an assignment of the patent to one through whom appellant claimed title.

The patentee, by instrument dated October 24, 1927, assigned to his father, T. J. Watts, title to the patent. This assignment was recorded in the United States Patent Office on July 6, 1937. By an unrecorded, but duly acknowledged, instrument dated November 1, 1928, the patentee's father, signing as Timothy J. Watts, assigned the patent to Watts Laundry Machinery Company, a corporation of which the father was president and controlling stockholder.

By instrument dated and acknowledged April 10, 1929, Watts Laundry Machinery Company reassigned the patent to T. J. Watts, who was still president and owner of the controlling stock interest in the as-

signor corporation. This reassignment was not authorized by the directors of the Watts Laundry Machinery Company and was not recorded in the Patent Office. The instrument was signed in behalf of the corporation by T. J. Watts as president and by his daughter as secretary, both of whom acknowledged the reassignment "as their free act and deed for the purposes set forth therein." The recital that "we are the sole owner of said patent and of all rights under the same" was unusual language to be used in a conveyance by a corporation.

During 1928, T. J. Watts, without authority, had withdrawn from the corporate funds $40,000 in excess of his salary and expenses. Upon his assignment of the patent to the corporation, he removed from the records the item of $40,000, added that amount to $5,000 previously paid him by the company for an earlier patent, and listed "Patents $45,000.00" in the financial statements of the company. The district court found no support for his claim that he had delivered to the company $40,000 of notes to cover his improper withdrawals, or for any other purpose.

On March 30, 1929, minority stockholders received from an audit report their first information that T. J. Watts had assigned the patent to the company in liquidation of the amount improperly withdrawn by him. In the latter part of April, 1929, Watts made a contract with the minority stockholders to purchase their stock. He made a part payment in cash, but did not fulfill the terms of his contract. Later in the year, he sold a sufficient portion of his stock to lose controlling interest in the company. He was dropped from the board of directors and, on February 28, 1930, was superseded in the presidency.

On April 7, 1931, the Watts Laundry Machinery Company executed a duly acknowledged bill of sale, granting and conveying to appellee, Super Ironer Corporation, for a consideration of $200, the receipt whereof was acknowledged, Patent No. 1,624,698, and other patents. The instrument recited that "the Certificates representing said Patents have been lost or mislaid, and in the event that said Certificates are found, the same will be duly assigned and transferred to the second party." This assignment was executed under seal of the Watts Laundry Machinery Company, was authorized by the corporation's directors, and complied with formal requisites. It was not recorded in the United States Patent Office until June 30, 1938. The date of recordation of this assignment, however, preceded the assignment on September 16, 1938, by T. J. Watts of his right, title and interest in the patent in controversy to Harry Koplin, who, on September 24, 1938, recorded his assignment in the Patent Office.

On February 9, 1939, Harry Koplin assigned his title to the patent to David Koplin, who, in turn, recorded his assignment on February 13, 1939. On December 5, 1939, David Koplin assigned his right, title and interest in the patent to appellant, Why Corporation, which recorded its assignment in the United States Patent Office on December 9, 1939.

For its title to the patent in suit, appellant relies upon the assignment from the patentee to T. J. Watts and upon the assignment, dated September 16, 1938, from T. J. Watts to Harry Koplin; and upon the subsequent mesne assignments described above.

■ The district court found, as a matter of fact, that the appellee corporation, on April 7, 1931, purchased the patent in suit for a valuable consideration, without actual or constructive notice or knowledge by any of its officers or directors of the prior unrecorded assignment of April 10, 1929, by Watts Laundry Machinery Company to T. J. Watts. Though controverted by some testimony, this finding is abundantly supported by evidence of record. The finding of a district court made upon evidence introduced by the testimony of witnesses in open court is presumptively correct. In re Great Lakes Transit Corporation, 6 Cir., 81 F.2d 441, 443.

■ Where an issue of fact turns upon the credibility of conflicting testimony adduced in open court, the conclusions of the trial judge are entitled to great weight. Bowen v. B. F. Goodrich Co., 6 Cir., 36 F.2d 306, 308. Compare United States v. United Shoe Machinery Co., 247 U.S. 32, 38 S.Ct. 473, 62 L.Ed. 968.

Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c, provides, inter alia: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Moreover the finding in the district court was that, prior to the assignment of September 16, 1938, from T. J. Watts to Harry Koplin, the appellee corporation had recorded in the Patent Office, on June 30, 1938, its legal title to the patent in suit acquired through the assignment of April 7, 1931, from the Watts Laundry Machinery Company to appellee.

The district court found further that, on September 16, 1938, Harry Koplin and appellant Why Corporation had notice from the record in the Patent Office of a prior assignment of the patent to appellee, and also had notice from the language of that recorded assignment from Watts Laundry Machinery Company to appellee that the patent had been assigned years before to the Watts Laundry Machinery Company.

From its findings of fact, all of which were supported by ample evidence, the district court reached the legal conclusion that, on September 16, 1938, T. J. Watts had no legal title to Patent No. 1,624,698, inasmuch as title had already vested in appellee; that, consequently, Harry Koplin acquired no title; and that appellant, claiming through him, never acquired title to the patent in suit. In our view, the deductions were correct.

■ Revised Statute 4898, Title 35, U.S. C.A. § 47, provides: " * * * An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from the date thereof or prior to such subsequent purchase or mortgage."

We agree with the Circuit Court of Appeals for the Second Circuit that "this statute does not require recording to support the validity of an assignment, except as to subsequent purchasers or mortgagees without notice, and by implication recognizes its validity as to all others." John Tuman & Sons, Inc., v. Basse, 113 F.2d 928.

■ The assignment of the patent from the Watts Laundry Machinery Company to appellee antedated the assignment by T. J. Watts to Harry Koplin by more than seven and a half years; and the assignment of the patent to appellee was recorded two and one-half months prior to the assignment by T. J. Watts to Harry Koplin. Harry Koplin was put on notice by the recorded assignment that appellee's assignor had acquired title to the patent by an unrecorded instrument. At his peril, he failed to make appropriate inquiry as to this representation. The minor discrepancy in the recorded instrument as to the date of the unrecorded instrument seems immaterial. Information that there was extant an unrecorded assignment to the assignor named in the recorded instrument was the material fact to be gleaned from inspection of the Patent Office records.

The assignment from Watts Laundry Machinery Company to appellee dated April 7, 1931, and recorded June 30, 1938, was executed for a valuable consideration, without notice of the prior unrecorded assignment of April 10, 1929, from Watts Laundry Machinery Company to T. J. Watts. Appellee, having recorded its assignment prior to the subsequent purchase of the patent by Harry Koplin from T. J. Watts on September 16, 1938, is vested with the title to the patent in suit.

This is a logical sequitur from the language of the recordation statute, hereinbefore quoted, when applied to the salient facts which have been stated without elaboration.

The judgment of the district court is affirmed.