THE PUTNAM PIT, INC., Geoffrey Davidian, Plaintiffs–Appellants,

v.

CITY OF COOKEVILLE, Jim Shipley, in his official capacity as City Manager of the City of Cookeville, Tennessee, Defendants–Appellees.

No. 01–6599.

United States Court of Appeals, Sixth Circuit.

Aug. 20, 2003.

Samuel J. Harris, Harris Law Firm, John W. Allen, Law Office of John Wayne Allen, Cookeville, TN, for Plaintiffs–Appellants.

John C. Duffy, Watson & Hollow, Knoxville, TN, for Defendants–Appellees.

Before KEITH and COLE, Circuit Judges; and WEBER, District Judge.*

* The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

## OPINION

COLE, Circuit Judge.

Plaintiffs Geoffrey Davidian and his publication, *The Putnam Pit*, appeal the jury verdict for Defendants City of Cookeville, Tennessee and City of Cookeville City Manager Jim Shipley in this civil rights action based on Defendants' refusal to create a hyperlink from Defendants' website to *The Putnam Pit* website. After this Court concluded that a genuine issue of material fact existed as to whether Defendants had violated Plaintiffs' First Amendment rights by discriminating against Plaintiffs solely because of their viewpoint, we remanded for a trial on this issue. After trial, a jury returned a verdict for Defendants, finding that *The Putnam Pit* did not meet the City of Cookeville's eligibility criteria for obtaining a hyperlink. As a result, the jury did not reach the question of whether Defendants had discriminated against Plaintiffs based solely upon Plaintiffs' viewpoint. The district court denied Plaintiffs' renewed motion for judgment as a matter of law. For the reasons described below, we AFFIRM the district court's judgment.

## I. BACKGROUND

### A. Procedural History

In October 1997, Plaintiff Geoffrey Davidian filed suit in state court against the City of Cookeville, Tennessee ("Cookeville" or the "City") and Cookeville City Manager Jim Shipley, in his official capacity, alleging federal-civil-rights and state-law claims. The case was removed to federal court.[1] On September 21, 1998, the district court granted Defendants' motion for summary judgment on the federal claims and dismissed the state-law claims without prejudice. Davidian appealed. On appeal, this Court affirmed the grant of summary judgment on Davidian's claims relating to the alleged denials of electronic access to Cookeville's parking ticket records. However, finding material questions of fact to be in dispute, this Court reversed the grant of summary judgment on Davidian's claim that Cookeville discriminated against him solely based upon his viewpoint when it refused to establish a hyperlink ("link") from Cookeville's website to the website for *The Putnam Pit. See Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834 (6th Cir.2000) (*"Putnam Pit I"*). On remand, the district court conducted a trial on the issue of whether Cookeville violated Davidian's First Amendment rights when it denied *The Putnam Pit* a link. At the close of the evidence, Defendants moved for judgment as a matter of law on the two sub-issues in the case: whether the subject matter of *The Putnam Pit* rendered it eligible for a link based on Cookeville's requirement that only websites that promote commerce, tourism, and industry of the local Cookeville area be linked, and, if so, whether the denial of the link was solely to suppress Davidian's viewpoint. 'Plaintiffs also moved for judgment as a matter of law.' The district court denied both motions and, subsequently, the jury returned a verdict for Defendants. On November 9, 2001, the district court denied Plaintiffs' renewed motion for judgment as a matter of law. Plaintiffs now appeal this denial.

---

1. This lawsuit originally involved a claim that Davidian's civil rights were being violated because requests that he made to Cookeville for certain records had been denied. However, on November 4, 1997, Davidian amended his complaint to add a claim that he was not permitted to have a link from the Cookeville website to his website in violation of his First Amendment rights. This amendment came just four days after the denial of Davidian's request for a link.

## B. Evidence at Trial

Davidian, who does not live in Tennessee, became interested in Cookeville in 1995 when he learned of the unsolved murder of a Cookeville woman, Darlene Eldridge.[2] In May 1996, Davidian decided to publish and edit *The Putnam Pit*, a small tabloid that focuses on alleged government corruption in Cookeville. He did so because he "thought there were some things in the community that needed to be said." Originally. *The Putnam Pit* was published in print form; however, in December 1996, Davidian created *The Putnam Pit* website for reasons of cost-efficiency.

Cookeville has a website, which, between about September 1997 and October 2001, included a "local links" page. At a September 1997 Cookeville Chamber of Commerce meeting. Cookeville invited local businesses to link their websites to the City's site by placing a hyperlink on the "local links" web page. At this time, Cookeville had no standard for determining whether a particular business would be permitted a link.

On October 15, 1997, Davidian sent Steve Corder an e-mail message requesting a link from the City's website to *The Putnam Pit* website. Corder was in charge of developing and maintaining that website. Specifically, Davidian's e-mail read: "Please add the 'Putnam Pit' to your local links page. The 'Putnam Pit' URL

http://www.putnampit.com. Thanks, Geoff Davidian, Editor of the 'Putnam Pit.' "

Although he had never previously denied a request for a link, Corder did not respond to Davidian's e-mail. Instead, Corder forwarded Davidian's request to either Jeff Littrell or City Manager Shipley. Neither Littrell nor Shipley responded to Davidian's October 15 e-mail. Corder testified that he did not create a link because he was familiar with *The Putnam Pit*'s website and thought *The Putnam Pit* was "controversial." When asked whether he thought that he would get in trouble if he had given *The Putnam Pit* a link, Corder responded, "I thought the odds of that were fairly good."

On October 24, 1997, Davidian wrote another e-mail, this time addressing it to Shipley, stating: "On October the 15th, I asked Steve Corder how to be listed on your local links page. I haven't heard from him so I thought you might help me. Thanks, Geoff Davidian."

After October 15, 1997, Shipley became the final decision-maker with regard to who received links to the Cookeville website. In this capacity. Shipley initially implemented a standard limiting the "local links" page to links to websites for not-for-profit corporations.[3] Although it was defunct by the time of trial, in October 1997, *The Putnam Pit* was a for-profit Tennes-

---

**2.** Davidian began investigating Eldridge's death as soon as he arrived in Cookeville. Davidian was stopped for speeding five or six days after his arrival. During the course of the prosecution of his speeding ticket, Davidian made numerous discovery requests and subpoenaed many city officials in an attempt to investigate the Eldridge murder in what Davidian referred to as a "journalistic enterprise." This investigation included the records requests, denied by Cookeville, that form the basis for certain claims dismissed on summary judgment.

**3.** Shipley testified that he had not realized that links to for-profit corporations had been permitted until Davidian's request was brought to his attention. Shipley believed that limiting links to only non-profit corporations "would limit it more to the governmental function." Shipley did not believe links to the websites of for-profit corporations were appropriate because he did not "want anybody visiting [the Cookeville] website to think that [Cookeville] endorse[s] . . . any of those for-profit businesses over another."

see corporation. On October 31, 1997, Shipley responded to Davidian, stating:

> Until you asked to be linked to our web page. I did not know that we were allowing any private businesses to link. I have stopped that practice. I do not feel the City should be allowing any links to private businesses. The only links that would be permitted on our page will be nonprofits. Therefore, I must decline your request to be linked.

In response, Davidian informed Shipley that he intended to transform *The Putnam Pit* into a not-for-profit corporation in order to meet the standard. Shipley told Davidian that *The Putnam Pit* would still not receive a link.

Shortly thereafter, Shipley changed the standard again. Specifically, from that time until Cookeville eliminated its "local links" page altogether, "[t]he standard for web links [wa]s that [the linked website] must promote the economic welfare, industry, commerce, and tourism in the local area to be linked to the web site." Thus, links were no longer limited to not-for-profit corporations.

Davidian added a page to *The Putnam Pit* website entitled "Commerce and Tourism, Cookeville, Tennessee," and again requested a link from Cookeville's website. On July 27, 1998. Davidian wrote Shipley, stating: "Please add this link to your local links page. I understand this meets your oft-articulated standard. Respectfully submitted. Geoff Davidian, editor and publisher of the 'Putnam Pit', a Tennessee corporation." Davidian testified that *The Putnam Pit* meets the criteria "because it advances—because it had to do with commerce, tourism, welfare, and the articulated standard: ..."

*The Putnam Pit* was still denied a link. Shipley testified that "the only thing that would make you think that it was a commerce and tourism page is the headline that says *The Putnam Pit's* commerce and tourism page" and that he did not see "how the average viewer would want to come to Cookeville after reading [that page]."

The Permit Place, a limited liability company that facilitates requests and issuance of permits for cities nationally, including Cookeville, was permitted a link on the "local links" page. The Putnam County Animal Shelter, a quasi-governmental entity jointly operated by Cookeville and Putnam County, was also permitted a link.

By the time of trial, in October 2001, Cookeville's website no longer included a "local links" page. At no time did Cookeville permit Davidian and *The Putnam Pit* a link from the Cookeville website.

At trial, the parties entered into the following relevant factual stipulations.

> Number one. The Plaintiff, Geoffrey Davidian, is the owner and publisher of the *Putnam Pit* web page. Number two. The Defendants, City of Cookeville, Tennessee, and the City Manager, Jim Shipley, acted under color of law.... Number four. In October 1997, ... Davidian requested of the City of Cookeville that the *Putnam Pit* web page be linked to the City of Cookeville's web site. Number five. At the time Davidian requested this link, several for-profit and not-for-profit entities were linked to the City's web site. Number six. Cookeville had no stated policy on what web sites could be linked to the City's web page prior to Davidian's request. Number seven. Shipley at some point thereafter determined that the City would allow links from the City of Cookeville web site only to other sites that promote the economic welfare, commerce, tourism, and industry of the local area. Pursuant to this policy. Shipley denied a link to the *Putnam Pit*

and had several links to other web sites removed from the City's web site. Number eight. The City of Cookeville had denied Davidian a link or direct access from the City's web site to the *Putnam Pit'* s web page.

## II. ANALYSIS

### A. Standard of Review

This Court reviews a district court's decision on a Rule 50(b) motion based on sufficiency of the evidence *de novo*. *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir.1996). In a federal question case such as this one, we use the same standard used by the district court. *Id.* That is to say, we do not weigh the evidence, question the credibility of the witnesses, or substitute our judgment for that of the jury. *Id.* at 175–76. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, and that party must be given the benefit of all reasonable inferences. *Id.* at 176. "The motion should be granted, and the district court reversed, only if reasonable minds could not come to a conclusion other than one favoring the movant." *Id.*

### B. Law of the Case

■ As this Court explained in *Putnam Pit I*, the City of Cookeville's website is a nonpublic forum. 221 F.3d at 844.[4] Further, in *Putnam Pit I*, we explained the standards applicable to the regulation of nonpublic fora: "The government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Id.* at 845 (citing *Cor-nelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). We further explained:

> [T]he city of Cookeville's policy, in addition to being reasonable in light of the city's interest, must also be viewpoint neutral. Although the avoidance of controversy is not a valid ground for restricting speech in a public forum, a nonpublic forum by definition is not dedicated to general debate or the free exchange of ideas. The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose. Therefore, while the city may restrict use to those who participate in the forum's official business, it may not do so based on viewpoint. In other words. Davidian has no entitlement to a link to the city's Web site, however, he may not be denied one solely based on the controversial views he espouses, without regard for the forum's purpose and structure.

*Id.* (internal quotation marks and citations omitted).

Thus, at trial, the jury was first required to determine whether *"The Putnam Pit* website meets the City of Cookeville's eligibility criteria of promotion of economic welfare, commerce, and tourism in the Cookeville area." The jury concluded that *The Putnam Pit* website did not meet the eligibility criteria. If the jury had found that *The Putnam Pit* did meet Cookeville's criteria, the jury would have had to determine whether "the City of Cookeville denied a link on the City's web site to plaintiffs solely based on the view-

---

4. Here, we are bound by *Putnam Pit I* as it is both the law of this Circuit, and the law of the case. *See United States v. Graham*, 327 F.3d 460, 464 (6th Cir.2003) (explaining that, to ensure consistency, the doctrine of the law of the case directs that a decision of an appellate court on an issue of law, unless vacated or set aside, governs the issue during all subsequent stages of litigation in both the *nisi prius* court and thereafter on any further appeal).

point espoused by plaintiffs on an otherwise includible subject." Given its first finding, however, the jury did not reach this question, nor did it assess damages.

## C. Whether the Jury Verdict was Proper

The parties stipulated to the fact that, under Cookeville's policy, only websites that promoted the economic welfare, commerce, tourism, and industry of the local area were eligible to have a hyperlink on the Cookeville website's "local links" page. The jury concluded that *The Putnam Pit* did not meet Cookeville's eligibility criteria of promotion of economic welfare, commerce, and tourism in the Cookeville area. This conclusion was amply supported by the evidence.

Davidian testified that in November 1996, he did not publish *The Putnam Pit* in order to promote commerce, tourism, and industry. However, Davidian testified that he changed the focus of *The Putnam Pit* in response to Cookeville's changing standard. In particular. Davidian added a page entitled "Commerce and Tourism, Cookeville, Tennessee." Despite this change. Shipley still denied *The Putnam Pit* a link. As noted previously, Shipley testified that "the only thing that would make you think that it was a commerce and tourism page is the headline that says *The Putnam Pit's* commerce and tourism page" and that he did not see "how the average viewer would want to come to Cookeville after reading [that page]."

Shipley further testified that *"The Putnam Pit ... does exactly the opposite of what the City of Cookeville is trying to achieve with its web site.... I never felt like [The Putnam Pit] met the criteria or even began to satisfy what we were trying to achieve with the web site."* The Cookeville website was "never intended ... to be a bulletin board for people to express their opinions." The jury was entitled to rely on Shipley's testimony.

Davidian testified that the overall purpose of *The Putnam Pit* is "to create a climate in which corruption cannot endure." Thus, Davidian extrapolated, by exposing the corruption and problems in Cookeville, *The Putnam Pit* Promotes tourism and commerce in the area. Specifically, Davidian testified that one purpose of *The Putnam Pit* is "to point out problems that can be resolved by the government in order that this area is attractive and nurtures a good life, business industry, and commerce." Davidian testified this purpose demonstrates that *The Putnam Pit* was intended to promote commerce, tourism, and industry in Cookeville "in the long run" by provoking the government to address local problems.

Further, Davidian testified that his website provides information useful to people who might move to Cookeville, such as information about toxic waste sites in the area. Shipley admitted that the website included some useful information such as Cookeville Health Department grades for restaurants. Shipley acknowledged that Cookeville's electric company, county budget, schools, drug problems, environmental clean-up sites, and local restaurants—all topics addressed in *The Putnam Pit*—are important governmental interests, even though it still did not meet Cookeville's criteria. While the jury could have agreed with Davidian, it was not obliged to do so.

As Shipley testified and Davidian admitted, *The Putnam Pit* contains primarily Davidian's opinions. The website also contains postings, largely including opinion postings, from other individuals that are not screened in any way. Davidian stated that he believes that "a city that allows free expression is a healthy place to locate a business." However, the jury was well within the bounds of reasonableness in

rejecting Davidian's claim that this makes *The Putnam Pit* eligible under Cookeville's policy.

*The Putnam Pit* also makes extensive use of satire and ridicule. It is highly critical of Cookeville's government and, using satire, often describes Cookeville and its officials in a negative light. For example, one article read: "Who wants to relocate a business to a community with unsolved murders and where people are afraid and have refused to control a corrupt and incompetent government." Another was entitled: "Cookeville. City of unsolved murders and big signs at taxpayer expense." Another line in *The Putnam Pit* read: "After reading some of this crap. I wouldn't move to Putnam for love or money." The jury was likewise justified in concluding that *The Putnam Pit's* use of satire and ridicule took it outside the realm of promoting economic welfare, commerce, tourism, and industry because, taken literally, much of what was said in *The Putnam Pit* did precisely the opposite.

■ Viewing this evidence in the light most favorable to Defendants and giving Defendants the benefit of all reasonable inferences, as we must in reviewing the denial of a motion for judgment as a matter of law, we find that reasonable minds could render a verdict for Defendants on the question of whether *The Putnam Pit* website met Cookeville's criteria. Although Davidian testified that his website met the criteria, City Manager Shipley testified that it did not. From the substantial evidence of what the subject matter of *The Putnam Pit* included, the jury was free to conclude, as it did, that *The Putnam Pit* did not promote economic welfare, commerce, and tourism of the Cookeville area.

The jury was only required to decide whether Cookeville discriminated against Davidian's *Putnam Pit* solely on the basis

of the viewpoint it expresses if it concluded that *The Putnam Pit* met the eligibility criteria established by Cookeville. Thus, the jury did not reach this question. Because we hold that the jury's finding that *The Putnam Pit* website was not eligible under the City's criteria was supported by the evidence, we need not address whether Cookeville denied a link to *The Putnam Pit* solely on the basis of viewpoint.

## D. Facial Challenges

■ On appeal, Plaintiffs raise two facial challenges to Cookeville's policy. First, Plaintiffs claim that Cookeville's policy that links will only be given to websites that promote the economic welfare, commerce, tourism, and industry of the local area is void for vagueness under the Due Process Clause of the Fourteenth Amendment. Next, Plaintiffs claim that the same policy is unconstitutionally overbroad under the First Amendment. Defendants Cookeville and Shipley contend that these issues are not present in this case because no facial challenge was previously raised, and:

> [T]he sole issue remanded for trial by this Court in Plaintiffs' first appeal was whether the City of Cookeville's application of its web site link policy to deny Plaintiffs a link to *The Putnam Pit* web site from the City's web site, a non-public forum, constituted viewpoint discrimination in violation of the First Amendment. *Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834, 945–846 (6th Cir.2000).

We can find noting in the record to substantiate Plaintiffs' claim that this issue is properly before this Court. Specifically, nothing in the Pretrial Order, our decision in *Putnam Pit I*, the transcript of the trial proceedings, or Plaintiffs' renewed motion for judgment as a matter of law supports this claim. Plaintiffs rely heavily on our

decision in *Putnam Pit I,* however, this Court's decision did not—indeed could not—inject a facial challenge into this case. This Court's failure to address Plaintiffs' facial challenges at this juncture will not result in a miscarriage of justice.[5] Because this issue was not properly raised before the district court or the jury prior to this appeal, it will not be considered by this Court. *See Bailey v. Chattem,* 684 F.2d 386, 391 (6th Cir.1982).

## III.   CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court denying Plaintiffs' motion for judgment as a matter of law.

---

**5.** In fact, even if it were properly before this Court, Plaintiffs' facial challenge to Cookeville's policy may be moot because the allegedly offensive policy has been eliminated, rendering this Court unable to award the relief Plaintiffs sought through their facial challenge. *See Speer v. City of Oregon,* 847 F.2d 310, 311 (6th Cir.1988) (quoting *Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir. 1986)).