MONAGHAN, GDN., APPELLEE, *v.* RIETZKE, APPELLANT.

(No. 4345—Decided January 17, 1949.)

*Mr. Ben Neidlinger,* for appellee.
*Mr. Percy R. Taylor* and *Mr. Fred G. Carpenter,* for appellant.

FESS, J.   At the conclusion of the taking of testimony the trial court directed the jury to return a verdict for the plaintiff, but submitted to the jury the determination of the amount of damages.   From a judgment entered on a verdict in the sum of $5,000 defendant appeals on questions of law.

Plaintiff, as guardian of Nettie A. Kreuch, an incompetent, brought his action against her stepdaughter, the defendant, Olive Rietzke, for fraud and deceit incident to the execution of a quitclaim deed conveying to the defendant a life interest in three rooms in a two-family dwelling.   For convenience and clarity, the parties will be referred to as Nettie and Olive.   In 1919, Nettie married the father of Olive.   On June 1, 1934, Nettie and her husband conveyed the premises,

consisting of a two-story duplex, to Olive by quitclaim deed "subject to a life lease in the apartment now occupied by the grantors herein." The evidence fairly discloses that the "life lease" referred to three rooms at the rear of the first floor, which Nettie and her husband occupied until shortly before the latter's death in 1947. The uncontradicted testimony of Olive was that from June 1934 Olive permitted her father to retain the rents from that portion of the premises not occupied by him and Nettie. This rent amounted to about $585 annually. Olive testified also that she voluntarily paid the delinquent and current taxes and made repairs and improvements amounting to $2,500.

About the middle of June 1947, Olive's father was taken to a hospital and Nettie, then 83 years old, went to live with Olive as a member of her family. He died June 28, 1947. Several days before his death, Olive asked Nettie if she would be willing to move into the two front rooms of the downstairs apartment instead of occupying the three rear rooms. Nettie replied that "she wouldn't want to live there if he went on." In answer to Olive's inquiry whether Nettie would be willing to put that in writing, Nettie said, "yes," and on July 5, 1947, she executed a quitclaim deed conveying her interest in the premises to Olive in consideration of one dollar and other good and valuable consideration. On July 9, 1947, Olive applied for an old age pension on behalf of Nettie, which was granted in November. An application for old age pension in 1935 on behalf of Nettie and her husband had been denied, as well as a second application in 1943. On November 26, 1947, Olive sold the premises to third persons for the sum of $7,650.

Nettie continued to reside in Olive's home until shortly after Christmas when she developed "wander-

lust,'' evidenced by a desire to engage a taxicab and go on a visiting tour among old friends. Out of her $50 per month pension Olive took $35 per month for board and room for November and December, but with the remaining $15 Nettie proceeded on shopping and visiting tours. On December 29, 1947, she ended up in the East Toledo police station, having been delivered there by a cabdriver when she ran out of funds to pay her fare. Nettie remained in the police station until January 6, 1948. Olive refused to assume any responsibility for Nettie's further care except to have her committed to the Toledo State Hospital on January 6, 1948. At the instigation of one of Nettie's octogenarian friends, plaintiff was appointed guardian of Nettie on March 2, 1948. On recommendation of the staff of the Toledo hospital, Nettie was released on February 20, 1948, and plaintiff placed her with an old friend for a month and thereafter in a convalescent home. Upon calling Olive regarding Nettie's situation, Olive stated to plaintiff that ''I won't have anything to do with that dirty old lady.'' Plaintiff thereafter filed his petition for damages. The petition is a more or less blunderbuss affair, probably on account of Nettie's incompetence. It alleges in substance that Olive induced Nettie to execute the quitclaim deed because she was mentally infirm and unable to comprehend the nature of the transaction and upon the representation that Olive would support Nettie for the rest of her life, which representation was untrue, etc.

Nettie did not testify at the trial, and counsel in argument stated she was not competent to testify.

At the conclusion of the whole case, the trial court instructed the jury to return a verdict for the plaintiff and submitted to the jury *only* the matter of determining the amount of damages, including punitive damages. Notwithstanding the reprehensible conduct

of the defendant as disclosed by the evidence, we are of the opinion that the action of the court in finding for the plaintiff as a matter of law was erroneous.

In equity, if it appears that a fiduciary or confidential relationship existed between the parties to a transaction, or if it be established by evidence that one of the parties possessed a power or influence over the other, or that one was of very weak mind by reason of sickness or mental decline, the burden of proof lies upon the party filling the position of active confidence or possessing the power or influence, as the case may be, to clearly establish the perfect fairness and honesty of the transaction. *Atwater, Gdn.,* v. *Jones,* 24 C. C. (N. S.), 328, 34 C. D., 605; *Kime* v. *Addlesperger,* 2 C. C. (N. S.), 270, 277, 14 C. D., 397; *Peterson* v. *Mitchener,* 79 Ohio App., 125, 133, 71 N. E. (2d), 510.

But in an action at law the circumstances of the parties, as well as whether the defendant has clearly shown the fairness of the deal, present questions of fact to be submitted for determination by the jury.

As we view the allegations of the petition, it is possible that the damages suffered by Nettie might be measured upon two alternative grounds or theories. First, if the jury should find that Nettie conveyed her life interest without consideration, the measure of damages would be the value of Nettie's life interest in the three rooms. In this connection, evidence of Nettie's life expectancy and the reasonable value of the use and occupancy of the three rooms for such period was admissible.

A more serious and disturbing problem as to the measure of damages arises under the allegation that Olive fraudulently promised to support Nettie for the balance of her life. Contracts of a grantee to support the grantor, or to provide a home for him, are regarded as belonging to a special class, imposing upon the

grantee the duty of performance in case he retains the benefits of the grant induced by the promise. The general rule that fraud cannot be predicated merely on an unfulfilled future promise is inapplicable to prevent an action for damages for failure to provide support where there is a wilful and wrongful refusal to comply with the contract. Where the agreement is made by the grantee for the fraudulent purpose of securing the deed, without intention of performance, there is fraud vitiating the conveyance and equity will set it aside. 51 A. L. R., 139. But in the instant case plaintiff does not seek to set aside the deed and damages, nor does he seek damages for a breach of the defendant's promise of support. The gist of his action is damages for the fraud itself. Under this theory of the case, is the measure of damages the value of the life interest in the three rooms or the reasonable cost of the support and care of Nettie for her life expectancy? We are inclined to the opinion that the so-called "benefit of the bargain" rule which has been adopted in Ohio should be applied to the instant case. Cf. *Molnar* v. *Beriswell*, 122 Ohio St., 348, 171 N. E., 593. Applying this principle, if there was sufficient evidence to support the fraudulent promise, the jury should have been instructed that, if it found that the defendant made such fraudulent promise, the measure of damages would be the reasonable value of the support and care of Nettie from December 29, 1947, for the remainder of her life, disregarding any old age compensation which Nettie may have received or may be entitled to receive. Cf. *Bacon* v. *Gibbs*, 4 Dec. Rep., 23.

Evidence was likewise admitted on cross-examination that, after receiving the deed in 1934, Olive permitted her father to retain all the rents from the premises and such rent as Olive collected she turned over to him.

Probably the 1934 deed was in anticipation of Nettie and her husband's unsuccessful application for old age compensation, but there is no direct evidence of such purpose. No claim is made in the petition that the 1934 deed was in consideration of the grantors receiving the rents for life. The court, however, erroneously told the jury that as a matter of law the right to collect the rentals was retained by Nettie and her husband when they conveyed title to Olive in 1934, and that after the death of her husband in 1947 Nettie retained the right to continue to collect the rents for the remainder of her life.

The circumstances disclosed by the evidence warrant the consideration by the jury of exemplary damages in case it should find for plaintiff.

For error in instructing the jury to return a verdict for plaintiff and in instructing on the measure of damages, the judgment is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

CONN and CARPENTER, JJ., concur.