**COAL RESOURCES, INC., et al.,**
**Plaintiffs-Appellees,**
**Cross-Appellants,**

v.

**GULF & WESTERN INDUSTRIES,**
**INC., et al., Defendants-Appellants,**
**Cross-Appellees.**

Nos. 82–3443 to 82–3446.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 10, 1983.

Decided March 4, 1985.

Rehearing and Rehearing En Banc
Denied May 10, 1985.

---

Donald J. Mooney, Jr., Jacob K. Stein (argued), Paxton & Seasongood, Cincinnati, Ohio, for Gulf & Western Industries.

Thomas S. Calder, Vincent B. Stamp (argued), Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for Coal Resources.

Before CONTIE and WELLFORD, Circuit Judges, and MORTON, Senior District Judge.[*]

CONTIE, Circuit Judge.

This is the rehearing under Rule 40 of the Federal Rules of Appellate Procedure of both an appeal brought by defendant Gulf & Western Industries, Inc. and a cross-appeal brought by plaintiff Coal Resources, Inc. In the district court, the plaintiff asserted claims for breach of contract, common law fraud and violations of the federal securities laws. The defendants asserted a counterclaim for fraud. A jury awarded Coal Resources $6,384,000 on the breach of contract claim, $5,666,000 on the common law fraud claim, $5,000,000 on the securities claim, $11,000,000 in punitive damages and $350,000 in attorney's fees. Coal Resources subsequently accepted a remittitur under which it would receive $12,050,000 "in full of all jury awards." The district court also granted Gulf & Western's motion for JNOV on the securities claim.

In its original opinion, the hearing panel affirmed the judgment on the securities law issue, reversed the judgment on the other claims and remanded those claims for a new trial. 738 F.2d 438. Coal Resources then filed a petition for rehearing and/or suggestion for rehearing en banc, primarily arguing that the panel had ignored the

---

[*] The Honorable L. Clure Morton, Senior Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

parties' stipulation at trial regarding the burden of proof and that the panel had not articulated any reason justifying the reversal of the breach of contract award. The panel granted rehearing and the parties have filed supplemental briefs. Gulf & Western contends on rehearing, as it did on appeal, that it is entitled either to judgment as a matter of law on all claims or to a retrial of those claims. For the reasons set forth below, we conclude that the JNOV on the securities law claim should be affirmed, that the judgment on the common law fraud claim should be reversed and that the judgment on the contract claim should be vacated and remanded for a new trial.

## I.

■■■ Before proceeding further, we emphasize several points which were correctly decided in our first opinion and which require no further discussion. First, we reaffirm our conclusion that the acquisition agreement in question was not a security within the meaning of the federal securities laws. *See Marine Bank v. Weaver*, 455 U.S. 551, 559–60, 102 S.Ct. 1220, 1225–26, 71 L.Ed.2d 409 (1982). Accordingly, the district court properly granted JNOV to Gulf & Western on the securities law claim. Second, we again hold that Coal Resources obtained a double recovery. On the breach of contract claim, Coal Resources sought to be placed in the position that it would have achieved had the contract been fulfilled by Gulf & Western. On the common law promissory fraud claim, Coal Resources sought to obtain the monetary value of the Virginia and Kentucky leasehold interests which Gulf & Western had disposed of and which cannot be returned. Thus, Coal Resources achieved the monetary equivalent of contract rescission through its promissory fraud theory. It is clear, however, that a plaintiff may not have a contract both enforced and rescinded at the same time. Since Coal Resources has obtained a double recovery, the damage award under review cannot stand. Third, we reaffirm our holding that the testimony of witnesses Zegeer and Owens concerning damages for fraud was inadmissible speculation. Finally, we note that although the original opinion referred to the statute of frauds in a footnote, the reversal of the judgment on the breach of contract and common law fraud claims was not based upon the statute of frauds.

## II.

Gulf and Western has contended throughout this litigation that it is entitled to judgment as a matter of law on the Ohio common law fraud claim. The plaintiff's theory is one of promissory fraud. Specifically, Gulf & Western is alleged to have promised to invest $3.9 million in the leaseholds with knowledge that it would not perform the promise. This promise was not included in the written contract. The contract contains an integration clause.

■■■ Although it is clear that making a contractual promise with no present intention of performing it constitutes promissory fraud in Ohio, *see Dunn Appraisal Co. v. Honeywell Information Systems Inc.*, 687 F.2d 877, 883 (6th Cir.1982) (construing Ohio law); *Tibbs v. National Homes Construction Corp.*, 52 Ohio App.2d 281, 287, 369 N.E.2d 1218 (1977), and that extrinsic evidence always is admissible to show promissory fraud, *see Globe Steel Abrasive Co. v. National Metal Abrasive Co.*, 101 F.2d 489, 491 (6th Cir.1939) (construing Ohio law), Gulf & Western argues that a promissory fraud theory may not be used to impose additional obligations upon a party to a written contract containing an integration clause. According to the defendant, Coal Resources was entitled to show through extrinsic evidence that Gulf & Western had no intention, at the time the contract was entered into, of performing the promises it had made *in the written acquisition agreement*. The defendant earnestly contends, however, that Coal Resources was not entitled to show that Gulf & Western had no intention of performing promises which were *not* reflected in the written agreement.

We agree with the defendant. First, the early cases discussing promissory fraud

claims arising under Ohio law involved situations in which the promises that the defendants wrongfully had no present intention of performing were included in the respective contracts. *See Globe Steel, supra; Monaghan v. Rietzke,* 85 Ohio App. 497, 89 N.E.2d 159 (1949).[1] In contrast, the promise by Gulf & Western to invest $3.9 million in the leaseholds was not part of the acquisition agreement.

Second, the *Dunn* case, which at first glance appears to support Coal Resources' position, is distinguishable. In *Dunn,* the defendant sold a computer system to the plaintiff. Although the defendant orally promised to convert approximately four hundred of the plaintiff's programs so that they could be used in the new system, the written agreement only stated that two hundred fifty programs would be converted. The defendant subsequently refused to convert all four hundred programs and the plaintiff sued under a promissory fraud theory. This court held that the defendant had defrauded the plaintiff in having had no intention of performing the promise to convert all four hundred programs when that promise was made. This was true even though the promise to convert the additional one hundred fifty programs was not reflected in the written agreement. Hence, *Dunn* stands for the proposition that a defendant may be held liable for having had no present intention of performing a promise made outside the terms of a written agreement.

The *Dunn* case is distinguishable, however, on the ground that the opinion does not indicate that an integration clause was involved. Unlike the dissent, we are unwilling to assume that because a large corporation was involved in *Dunn,* an integration clause must have been included in the contract. The purpose of an integration clause stating that there are no agreements or understandings between the parties other than those reflected in the written contract is, of course, to prevent either party from relying upon statements or representations made during negotiations that were not included in the final agreement. To permit a plaintiff to use a promissory fraud theory in order to add terms to an integrated contract, as Coal Resources attempts to do here, would completely defeat the purpose of an integration clause. We hold that although Coal Resources was entitled to prove through extrinsic evidence that Gulf & Western had no intention when the contract was made of performing promises that were included in the acquisition agreement, Coal Resources was not entitled to show that Gulf & Western never intended to invest $3.9 million in the leaseholds. As has been indicated, the latter promise was not part of the acquisition agreement.[2]

Since Gulf & Western is entitled to judgment as a matter of law on the promissory fraud claim, we need not address the issue of whether the jury instructions on that claim were proper. Nor need we reach the question, which was addressed in our previous opinion, of Coal Resources' burden of

---

1. Although the *Tibbs* case, 52 Ohio App.2d 281, 369 N.E.2d 1218, defined promissory fraud, its facts are inapposite here. The court held in *Tibbs* that statements concerning the quality of materials and the qualifications of certain engineers constituted mere "puffing" and were not representations of fact. Accordingly, the court did not address the issue of whether promises which are not reflected in a contract containing an integration clause may be the subject of a promissory fraud action.

2. The dissenting opinion correctly states that an integration clause does not bar a party from demonstrating fraud in the inducement. This point is irrelevant, however, because this case does not involve a claim of fraud in the induce-

ment. Gulf & Western's promise (if it was made) to invest $3.9 million in the leaseholds was a promise of future performance rather than a representation of past or present material fact. At has been indicated, the purpose of an integration clause is to preclude reliance upon promises of future performance that have not been included in the contract. Since this case does not involve a claim of fraud in the inducement, our holding cannot possibly do violence to Ohio law on the subject. Similarly, our holding does not conflict with those in other states. *See, e.g., Stone v. Williams,* 358 S.W.2d 151 (Tex.Civ.App.1962) (integration clause precludes proof of collateral promises not contained in writing).

proof on that claim. We neither reaffirm nor reject the previous opinion's analysis of that question.

## III.

Gulf & Western has also contended on appeal and on rehearing that it is entitled to judgment as a matter of law on the breach of contract claim. Coal Resources' breach of contract theory is three-fold. First, Gulf & Western is alleged to have breached an implied obligation to develop the leaseholds in a reasonably diligent fashion. Second, Gulf & Western is alleged to have breached certain duties, imposed by the Virginia leases, which Gulf & Western expressly assumed in the acquisition agreement. Third, Gulf & Western is alleged to have breached express promises to pay $500,000 on June 11, 1977 as part of the contract price, to obtain permits and reclamation bonds, to perform reclamation work and to pay minimum monthly royalties to the lessors of the properties in question.

According to the plaintiff's expert witness Zegeer, diligent development of the Virginia properties during the two-year multiple period under generally accepted mining principles[3] would have required Gulf & Western to install deep mining equipment and a new coal washing facility. Zegeer testified that during the first year of the multiple period, Gulf & Western should have built the coal washing facility, installed one deep mine and engaged in strip mining operations. Total coal production would have been 275,000 tons. Zegeer further testified that during the second year of the multiple period, Gulf & Western should have installed a second deep mine. Total coal production would have been 400,000 tons (Tr. at 856–57). Coal Resources contends that since Gulf & Western took none of these steps, it breached an implied duty under the acquisi-

tion agreement[4] to develop the properties in reasonably diligent fashion.

▮▮▮ Coal Resources correctly argues that an implied duty of diligent performance generally exists where the contract price to be received by an assignor or seller is dependent upon the amount of future profits obtained by the assignee or buyer. *See Bailey v. Chattem, Inc.*, 684 F.2d 386, 396 (6th Cir.1982) (citing general principles of contract law). That situation is present here because Coal Resources was to receive a multiple of Gulf & Western's profits during the first two years after the signing of the acquisition agreement. Despite this fact, however, we hold that the plaintiff's implied obligation theory is defective as a matter of law. Of central importance is the fact that the acquisition agreement contained an integration clause stating that the agreement contained all of the parties' agreements and understandings. The clear import of this clause is that neither party was bound to discharge obligations not contained in the agreement. Accordingly, a duty to develop the Virginia properties in reasonably diligent fashion may not be implied under the acquisition agreement.

▮▮▮ This conclusion does not mean, however, that Gulf & Western is entitled to judgment as a matter of law on the plaintiff's entire breach of contract claim. As had been indicated, Coal Resources' claim is three-fold. The parties agreed in the final pre-trial order that Ohio law would control the construction of the acquisition agreement. The jury's award of $6,384,000 on the breach of contract claim was a general verdict. This court has held that where state law is involved, a district court should construe a general verdict as would the state courts. *See Keet v. Service Machine Co., Inc.*, 472 F.2d 138, 140 (6th Cir.1972). In Ohio, it is assumed that the

---

**3.** Coal Resources' theory of an implied duty of diligent development rests upon what was required of Gulf & Western under generally accepted mining principles and not upon Gulf & Western's parol promise to invest $3.9 million in the coal-bearing properties. Accordingly, the parol evidence rule is irrelevant to the discussion of this theory.

**4.** Whether Gulf & Western had an implied duty under the Virginia leases to develop the leaseholds in diligent fashion will be discussed below.

jury decided all issues in the prevailing party's favor. *Id.* Hence, although Coal Resources may not rely upon implied obligations arising from the acquisition agreement, Gulf & Western is not entitled to judgment as a matter of law on the breach of contract claim if Coal Resources' other theories of recovery are valid.

One of Coal Resources' alternate theories is that Gulf & Western breached express promises to pay $500,000 on June 11, 1977, to obtain permits and reclamation bonds, to perform reclamation work and to pay minimum monthly royalties to the lessors of the properties in question. Since breach of an express contractual promise obviously is a cognizable legal theory and since Coal Resources introduced evidence to support its claim that Gulf & Western breached the above mentioned express promises, we hold that Gulf & Western is not entitled to judgment as a matter of law on these claims.

■■■■ Coal Resources' other breach of contract theory is that Gulf & Western did not fulfill duties which were imposed by the Virginia leases and which were expressly assumed by Gulf & Western in the acquisition agreement. Before proceeding further, two preliminary points merit attention. First, Virginia law controls the question of what Gulf & Western's obligations were under the Virginia leases. Since the district court in this case was located in Ohio, it was required to apply Ohio's conflict of laws rules. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Under those rules, the interpretation of an agreement is governed by the laws of the state where the agreement was made or is to be performed. *See Soviet Import Export, Inc. v. General Tire International Co.,* 586 F.2d 5 (6th Cir.1978) (construing Ohio law); *Arsham v. Banci,* 511 F.2d 1108, 1114 (6th Cir.1975) (construing Ohio law); *Alropa v. Kirchwehm,* 138 Ohio St. 30, 33 N.E.2d 655 (1941). Since the Virginia leases were made and are to be performed in Virginia, Virginia law controls their interpretation.[5]

■■■■ Second, when Gulf & Western expressly assumed the duties imposed by the Virginia leases, it assumed both the obligations imposed by the language of those leases and any duties that Virginia law implies as a matter of law in lease situations. We emphasize this case presents two distinct questions: first, whether Gulf & Western was subject to implied duties under the acquisition agreement and second, whether Gulf & Western was subject to such duties under the Virginia leases. Although we have held that the integration clause prevents obligations from being implied under the acquisition agreement, we hold that the integration clause is irrelevant to the analysis of the Virginia leases because Gulf & Western expressly assumed all duties, express or implied under Virginia law,[6] arising under those leases.[7]

■■■■ Gulf & Western correctly argues that Virginia law implies no obligation of reasonably diligent development of the

---

5. This conclusion is not inconsistent with the parties' stipulation that Ohio law controls the interpretation of the acquisition agreement.

6. Under Ohio law, all mineral, oil and gas leases include an implied covenant to develop the land in reasonable fashion. *Ionno v. Glen-Gery Corp.,* 2 Ohio St.3d 131, 443 N.E.2d 504 (1983); *Beer v. Griffith,* 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980). The *Ionno* and *Beef* cases are irrelevant to the implied duty issue in this case, however, because Virginia law controls the construction of the Virginia leases.

7. Gulf & Western has argued that Coal Resources has no standing to sue for breach of the duties that the former expressly assumed be-

cause Coal Resources is not the lessor. Gulf & Western cites *Obenshain v. Halliday,* 504 F.Supp. 946, 956 (E.D.Va.1980) (construing Virginia law); *Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.,* 220 Va. 135, 142, 255 S.E.2d 518 (1979) and *Valley Landscape Co., Inc. v. Rolland,* 218 Va. 257, 259–60, 237 S.E.2d 120 (1977). These cases stand for the proposition that incidental beneficiaries who are not parties to a contract have no standing to sue to enforce the contract. This rule does not apply here because Coal Resources is a party to the acquisition agreement in which Gulf & Western expressly promised to discharge the duties imposed by the Virginia leases.

leaseholds under the facts of this case. Although Virginia law implies such a duty where the contract price to be received by the assignor or seller is completely dependent upon future profits or production obtained by the assignee or buyer, *see Home Creek Smokeless Coal Co. v. Combs,* 204 Va. 561, 571, 132 S.E.2d 399 (1963); *Shenandoah Land & Anthracite Coal Co. v. Hise,* 92 Va. 238, 241, 23 S.E. 303 (1895), it does not imply such a duty where a specified minimum amount must be paid by the assignee or buyer in addition to a percentage of future profits or production. *Home Creek Smokeless,* 204 Va. at 572, 132 S.E.2d 399. The present case is like the latter situation. Although Coal Resources was to receive a multiple of Gulf & Western's profits obtained from the leaseholds over a two-year period, Gulf & Western also was obliged to pay $2,057,522 when the acquisition agreement was closed and another $500,000 on June 11, 1977. Since these amounts were to be paid regardless of Gulf & Western's profits during the multiple period, no duty of reasonably diligent development may be implied under Virginia law.

▮ Gulf & Western's argument that it is entitled to judgment as a matter of law is undermined, however, when the express language of the Virginia leases is considered. All of the leases require the lessee to develop the mines in a diligent, workmanlike manner in accordance with the standards of good mining practice. Coal Resources introduced evidence through witness Zegeer that Gulf & Western neither diligently developed the mines nor observed good mining practice in failing either to install deep mines or build a new coal washing facility. Accordingly, Gulf & Western is not entitled to judgment as a matter of law on the breach of contract claim.

Although Gulf & Western is not entitled to judgment as a matter of law, we vacate the award for breach of contract for two reasons. First, we are uncertain whether Gulf & Western's alleged failure to discharge its obligation of reasonably diligent development caused injury of a kind that the assumption of obligations provision in the acquisition agreement was intended to prevent. We acknowledge that the purpose of the provision may have been to insure that Gulf & Western would diligently develop the Virginia properties so that Coal Resources would receive substantial sums under the multiple. If that were the parties' intent, however, they could more easily have effectuated it by placing a clause requiring diligent development of the properties in the text of the acquisition agreement itself. More likely, the parties' intent in placing the assumption of obligations provision in the acquisition agreement was to insure that Gulf & Western would be held liable for all damages proximately suffered by Coal Resources (including loss of payments under the multiple) if Gulf & Western failed to develop the leaseholds (or to discharge other lease obligations) and if the lessors then terminated the leases. In short, the event against which Coal Resources was seeking to protect itself through the assumption of obligations provision may have been the termination of the leases during the multiple period. If that were the parties' intent, however, then $6,384,000 in damages could not have been caused by Gulf & Western's alleged breach of the assumption of obligations provision by not diligently developing the leaseholds. Although the Kentucky leases were terminated during the two-year multiple period because Gulf & Western ceased paying minimum royalties (Ex. 531, App. at 2768), the maximum amount of contract damages that Coal Resources claimed in connection with the Kentucky properties was substantially less than $6,384,000. The Virginia leases were not terminated during the two-year multiple period. Under these circumstances, Coal Resources could not have suffered $6,384,000 in damages resulting from termination of leases.

▮ We hold that it is unclear what kind of harm the parties intended to protect against through the inclusion of the assumption of obligations clause in the acquisition agreement. On remand, extrinsic ev-

idence will be admissible on this question.[8] If the finder of fact determines that the assumption of obligations clause was breached in that Gulf & Western did not diligently develop the Virginia leaseholds, and if the finder of fact further decides that the purpose of the clause was to insure that Gulf & Western would diligently develop those properties so that Coal Resources would receive substantial payments under the multiple, then an award for breach of contract like the one under review here would be permissible. On the other hand, if the clause was intended to protect Coal Resources from damages resulting from the leases being terminated, then recovery may only be had for those damages proximately resulting from the termination of the Kentucky lease. The record reflects that those damages would be substantially less than $6,384,000.

A second reason that the award for breach of contract must be vacated is that the testimony of witness Tuck was excluded. We adhere to the holding in our previous opinion that witness Stagg's expert opinion evidence "cannot be considered the substantial equivalent of a miner's direct testimony as to the experience he actually had in attempting to mine the seam in question." *See Crown Cork & Seal Co. v. Morton Pharmaceuticals, Inc.*, 417 F.2d 921, 927 (6th Cir.1969). While we cannot predict whether the finder of fact will be persuaded by Tuck's testimony at retrial, his testimony is highly relevant to both the liability and damages issues. Specifically, this evidence tends to show that Gulf & Western acted reasonably and in accordance with generally accepted mining standards in not spending more money to develop the Virginia properties. Tuck's experience tends to show that spending more money would only have resulted in greater losses and that a diligent miner would not have made profits during the two-year multiple period.

## IV.

Several other points merit brief discussion. Coal Resources' claim for breach of contract involves predominately unliquidated damages. Under Ohio law, pre-judgment interest is not available on unliquidated claims, subject to certain exceptions not relevant here. *See Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 140 n. 9 (6th Cir.1983); *Braverman v. Spriggs*, 68 Ohio App.2d 58, 426 N.E.2d 526 (1980). We modify our previous decision, however, in order to indicate that if Gulf & Western is determined to be liable at retrial for failing to pay $500,000 on June 11, 1976, failing to obtain permits and reclamation bonds and failing to perform reclamation work, then the district court may assess pre-judgment interest on the damages resulting from these breaches if the court finds that the resulting damages were liquidated.

Second, since Gulf & Western is entitled to judgment as a matter of law on the promissory fraud claim, Coal Resources may not recover punitive damages at retrial. Third, since the jury found that Gulf & Western did not establish by a preponderance of the evidence[9] that Coal Resources was guilty of fraud, Gulf & Western may not re-assert its counterclaim at retrial. Finally, we do not address the issues of the effect of the remittitur, the propriety of comments made by the plaintiff's counsel during final argument and the alleged violation of Federal Rule of Civil Procedure 36. The judgment of the district court on the securities laws claim is AFFIRMED. The judgment on the promisso-

---

8. Indeed, extrinsic evidence is admissible in this case to explain any term in the acquisition agreement. On appeal, Coal Resources has consistently argued that extrinsic evidence is necessary to explain the meaning of the contract. At trial, Gulf & Western stipulated to the admissibility of extrinsic evidence (Tr. at 618–19).

9. We reiterate that we do not address the issue of whether common law fraud in Ohio must be proven by a preponderance of the evidence or by clear and convincing evidence. The jury in this case, however, was instructed under a preponderance of the evidence standard. Since Gulf & Western did not prevail under that test, it clearly would not have prevailed under the more demanding standard.

ry fraud claim is REVERSED. The judgment on the breach of contract claim is VACATED and that claim is REMANDED to the district court for a new trial.

MORTON, Senior District Judge, concurring in part and dissenting in part.

I concur in Part I of the majority opinion. I dissent from the remainder of the opinion.

Ohio will no doubt be surprised to learn that it is the only state where fraudulent inducement of contract can be concealed by throwing an integration clause into the written memorial of an agreement. *See, e.g., Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 406 (3d Cir.1981) (Penn. law); *Centronics Financial Corp. v. El Conquistador*, 573 F.2d 779, 782 (2d Cir.1978) (N.Y. law); *Baker v. Jewell*, 77 S.D. 573, 96 N.W.2d 299, 302 (1959); *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551 (1941); 3 Corbin, Contracts § 573 (1960). Of course, the Ohio courts hold to the contrary. *Niehaus v. Haven Park West, Inc.*, 2 Ohio App.3d 24, 440 N.E.2d 584, 586 (1981); *see Walters v. First National Bank of Newark*, 69 Ohio St.2d 677, 433 N.E.2d 608, 611 (1982). Ohio follows the general rule

> that where one party to a contract has been induced to enter into it through fraud, deceit, and misrepresentation of the other party as to material matters, the defrauded party does not become

bound by its terms, notwithstanding the contract contains a provision that there are no agreements or statements binding upon the parties except those contained therein. Fraud which enters into the actual making of a contract cannot be excluded from the reach of the law by any formal phrase inserted in the contract itself.

*Niehaus, supra* (quoting 24 Ohio jurisprudence 2d 639, Fraud and Deceit, Section 27).[1] The parol evidence rule does not bar evidence of fraudulent inducement because the evidence is offered not to add to or vary the terms of the written contract, but to avoid it in toto—including the integration clause. *E.g., Betz Laboratories, Inc., supra*, at 406; *Baker v. Jewell, supra*, 96 N.W.2d at 302; *Dallas Farm Machinery Company v. Reaves*, 158 Tex. 1, 307 S.W.2d 233, 234 (1957).[2]

Of course, an integration clause or a contractual provision specifically disavowing the assurances allegedly relied upon is strong evidence that those assurances were never made or that their incorporation in the written agreement was considered and rejected. *See Betz Laboratories, Inc., supra*, at 406–407, *Dallas Farm Machinery Company, supra*. Such factors are matters for the trier of fact to weigh. Mechanistic formulations such as those adopted by the majority can only frustrate the true

---

**1.** In *Sparhawk v. Gorham*, 101 Ohio App. 362, 139 N.E.2d 652, 654 (1956) and *Djubasak v. Taylor*, 128 N.E.2d 849, 850 (Ohio Ct.App.1955) parol evidence of fraudulent misrepresentations was admitted despite the presence of an integration clause in the final written contract. Those courts reasoned that the prior oral representations constituted collateral agreements separate and apart from the written agreements. A careful reading of those cases reveals they were simply early formalistic gropings toward the equitable rule applied in *Niehaus, supra*. *See generally*, Metzger, *The Parol Evidence Rule: Promissory Estoppel's Next Conquest*, 36 Vand.L. Rev. 1383 (1983).

**2.** The majority's attempt to distinguish the authorities cited in our original opinion is unpersuasive. I have scrutinized *Globe Steel Abrasive Co. v. National Metal Abrasive Co.*, 101 F.2d 489 (6th Cir.1939) and *Monaghan v. Rietzke*, 85 Ohio

App. 497, 89 N.E.2d 159 (1949) in vain for any indication that the promises those plaintiffs sought to enforce were included in the written contracts. To the contrary, *Globe Steel, supra*, reversed the district court's holding that enforcement of the alleged promise would violate the parole evidence rule. In *Monaghan, supra*, the written document was a quitclaim deed that recited consideration of $1.00 and other good and valuable consideration. The promise the plaintiff sought to enforce was that the grantee would provide her with life support in exchange for the transfer. As for *Dunn Appraisal Co. v. Honeywell Information Systems, Inc.*, 687 F.2d 877 (6th Cir.1982), any case can be distinguished on the ground of something it did not say. I find it highly unlikely, however, that a large corporation such as Honeywell would not include an integration clause in its contracts as a matter of course.

goal of all contract law: ascertainment and enforcement of the parties' true intentions.

I also dissent from the majority's ruling that the integration clause bars the plaintiffs from asserting a cause of action based on the defendants' breach of their implied duty to develop the purchased leases in a diligent manner. Ohio courts follow the rule that "[a]bsent an express provision to the contrary, [a mineral] lease includes an implied covenant to reasonably develop the land." *Beer v. Griffith*, 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980). I hardly consider the generalized integration clause used in this contract the kind of express provision needed to rebut this presumed duty. *See Centronics Financial Corp., supra,* at 782; *Kingsley v. Western Natural Gas Co.,* 393 S.W.2d 345, 349 (Tex.Civ.App. 1965). Whether the parties intended the defendants to assume this duty of diligent development is a question for the trier of fact to decide from all the evidence.[3]

In reviewing the history of this case, I have concluded that the confusion surrounding it arises from the failure to distinguish theories of liability and the remedies available under those theories. As the majority notes, "[A] plaintiff may not have a contract both enforced and rescinded at the same time." That principle is perfectly correct as regards remedies. In seeking to establish liability, however, a party may argue that a contract should be enforced; or, in the alternative, that it should be rescinded for fraud. I am afraid the majority, recognizing the inconsistency of these theories and the overlapping damages claimed under them, has sought to simplify the trial of the issues by legal formalism. The same result could be achieved by bifurcating the trial of the issues of liability and damages. If the trier of fact finds that the defendants were guilty of both fraudulent inducement and breach of contract, the plaintiffs should then be forced to declare under which theory of liability they wish to proceed. If they choose fraudulent inducement, the plaintiffs should be forced to elect between the remedies of rescission, reformation, or damages.

**3.** Since I would hold that the defendants had an implied obligation to develop the leases under the assignment, I need not decide whether such an obligation was implied in the leases themselves. In my opinion, the most reasonable interpretation of the defendants' promise to assume all obligations under the leases is that it was made to insure that those obligations would be performed for the lessors, not the plaintiffs' benefit. At the very least, the lessors would be an indispensable party to any action to enforce those obligations. Fed.R.Civ.P. 19.