**COAL RESOURCES, INC., et al., Plaintiffs,**

v.

**GULF & WESTERN INDUSTRIES, INC., et al., Defendants.**

No. C–1–76–592.

United States District Court, S.D. Ohio, W.D.

July 15, 1986.

Vincent Stamp, Cincinnati, Ohio, for plaintiffs.

Donald Mooney, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court, following the second trial and jury verdict in plaintiffs' favor, upon Motions of Defendants, Gulf & Western Industries, Inc., *et al.*, for New Trial and/or for Judgment Notwithstanding the Verdict (doc. no. 264) and Plaintiffs' Motion to Amend Judgment to Provide for Pre-Judgment Interest (doc. no. 266).

## PROCEDURAL HISTORY

After lengthy negotiations in 1975 and 1976, Coal Resources, Inc. and Gulf & Western Industries, Inc. agreed that the former would transfer its mining equipment and rights under coal leases in Virginia and Kentucky to the latter for $2,557,552 at closing; $500,000 to be paid on June 11, 1977; a "multiple" of defendants' annual net earnings for the two years following the closing; and the assumption by defendants of nearly $1,800,000 of liabilities. Plaintiffs only received the $2,557,522 paid at closing.

As originally filed, plaintiffs' Complaint alleged breach of contract, securities violations, and common law fraud. Conversely, defendants asserted a counterclaim for fraud. The first jury found for the plaintiffs on all counts, awarding $6,384,000 for breach of contract; $5,000,000 for securities violations; $5,666,000 for common law fraud; $11,000,000 in punitive damages; and $350,000 in attorney fees. This Court set aside the verdict and award on the securities law count and denied defendants' Motion for New Trial on condition that plaintiff accept $12,050,000 in full satisfaction of all jury awards. The Court also awarded prejudgment interest on that sum at the rate established in Ohio Rev.Code § 1343.03.

Both sides appealed to the United States Court of Appeals for the Sixth Circuit, 756 F.2d 443 which affirmed the securities law claim, reversed the common law fraud claim, and vacated the contract claim and remanded it for retrial. The Circuit Court also instructed that defendants' counterclaim could not be raised on retrial and that prejudgment interest would be available under Ohio law only with regard to liquidated damages.

Upon remand, defendants unsuccessfully attempted to compel arbitration of the claims under the Virginia leases, but successfully moved for summary judgment on the duty to diligently mine under the Kentucky leases. As the trial date approached, defendants confessed judgment as to their failure to pay $500,000 on June 11, 1977 as

required by the agreement between the parties, and as to their failure to promptly obtain mining permits and reclamation bonds on the Kentucky properties.

The only remaining issue at the second trial was whether Gulf and Western Industries, Inc. had assumed the express obligation to diligently mine the Virginia leases so that Coal Resources, Inc. would receive substantial sums under the multiple provision. After 15 days of trial and two days of deliberation, the jury answered that question affirmatively. Having also found that defendants breached that assumed obligation, the jury awarded plaintiffs $7,850,000 for breach of contract. The Motions presently under consideration followed.

DEFENDANTS' MOTIONS FOR NEW TRIAL AND/OR FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Pursuant to Federal Rules of Civil Procedure 50 and 59, defendants make the following separate motions:

Alternative Motions for JNOV and/or New Trial on the grounds that:

A. the verdict and judgment are contrary to law and contrary to the evidence, and

B. the award of compensatory damages is excessive and not supported by the evidence.

Motions for New Trial based upon:

C. improper admission over objection of prejudicial evidence,

D. improper exclusion of probative evidence,

E. improper and prejudicial jury argument of counsel, and

F. improper jury instructions.

The United States Court of Appeals for the Sixth Circuit has recently discussed the standards applicable both to a judgment notwithstanding the verdict and the grant of a new trial. In *Merkel v. Scovill, Inc.*, Case No. 83–3874, Slip Opinion March 28, 1986, the Court cited and followed *Reeves v. Power Tools, Inc.*, 474 F.2d 375 (6th Cir.1973), regarding the standard applicable to a judgment notwithstanding the verdict. In *Reeves*, the Court stated:

Judgment notwithstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. It should not be granted if there is a conflict in the evidence and credibility of evidence is not to be considered in passing on a Motion for Judgment. *Greer v. United States*, 408 F.2d 631 (6th Cir. 1969); *Moore's Federal Practice*, § 50.-07(2), 2d Ed.

The Court also explained the standard in *National Polymer Products v. Borg-Warner*, 660 F.2d 171 (6th Cir.1981):

Thus, if there is sufficient evidence to raise a question of fact for the jury, JNOV is improper. In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. In deciding the Motion, the trial court must view the evidence in a light most favorable to the party against whom the motion is made drawing from that evidence all reasonable inferences in its favor. *Morelock v. NCR Corporation*, 586 F.2d 1096 (6th Cir.1978), *cert. denied*, 441 U.S. 906 [99 S.Ct. 1995, 60 L.Ed.2d 375]; *Gillham v. Admiral Corporation*, 523 F.2d 102 (6th Cir.1975), *cert. denied*, 424 U.S. 913 [96 S.Ct. 1113, 47 L.Ed.2d 318].

In the *National Polymer* case, the United States Court of Appeals for the Sixth Circuit also considered a Motion for a New Trial. The following statement was made:

"A Motion for a New Trial is addressed to the sound discretion of the trial judge and when the judge has set the jury's verdict aside as against the clear weight of the evidence, that action will not be disturbed unless the Court has abused its discretion," citing *Fortenberry v. New York Life Ins. Co.*, 459 F.2d 114 (6th Cir.), *cert. denied*, 409 U.S. 981 [93 S.Ct. 1414, 35 L.Ed.2d 697] (1972).

A. *Alternative Motion for JNOV or New Trial on the Grounds that the Verdict and Judgment are Contrary to Law and Contrary to the Evidence.*

■ Defendants allege that they are entitled to JNOV or new trial on the Virginia lease claims because 1) they had fulfilled their obligations as a matter of law and 2) the verdict is against the weight of the evidence. This Court will not grant summary adjudication of a claim which can only be properly resolved by the jury. The Circuit Court specifically rejected defendants' familiar argument that the Virginia lease claims should be dismissed as a matter of law. *Coal Resources, Inc. v. Gulf & Western Industries, Inc.*, 756 F.2d 443, 450 (6th Cir.1985). Whether defendants had an obligation to diligently develop the Virginia properties and whether they met that obligation are questions for the jury; this case was remanded specifically to further develop and present those issues to a second jury. Such questions of fact must be decided by the jury and only on a case-by-case basis.

A jury verdict should be upheld so long as there is any competent and substantial evidence in the record to support it even if contradictory evidence was presented. *Green v. Francis*, 705 F.2d 846 (6th Cir. 1983); *Alaniz v. San Isidio Independent School District*, 742 F.2d 207 (5th Cir. 1984). Measured by this standard, sufficient evidence was presented to support the jury's findings, therefore JNOV is improper and defendants are not entitled to a new trial on that basis.

B. *Alternative Motion for JNOV or New Trial on the Ground that the Award of Compensatory Damages is Excessive and is Not Supported by the Evidence.*

Defendants allege that plaintiffs' expert opinion testimony was incompetent and cannot support the verdict because 1) the damages were based on theoretical calculations of profits and speculative assumptions, 2) the testimony is barred by judicial estoppel, and 3) the testimony was not evidence of the contract requirements of "diligent mining."

1. Theoretical Calculations and Speculative Assumptions.

Defendants' argument that the testimony of Messrs. Barker and Owens was incompetent and cannot support the verdict purportedly challenges the legal sufficiency of their testimony. This Court determined that both Barker and Owens were qualified to express their opinions based upon the fact that their knowledge of the subject is such that it would assist the jury in arriving at the truth. Defendants' objection, in reality, challenges the weight given to those opinions.

It is a basic premise in our trial system that the trier of fact is to judge the credibility of the witnesses and weigh the conflicting testimony. The witnesses were available for cross-examination, were vulnerable to rebuttal opinions from defendants' own witnesses, and subject to arguments in opposition available to defense counsel on closing. The jury in this case was presented with all the facts and circumstances having a tendency to show damages or a probable amount so that it could make the most intelligent and reasonable estimate of damages.

■ Defendants contend that the damages cannot stand because they are based on theoretical calculations and speculation. This Court will not deny the plaintiffs the right to recover any actual damages just because the amount may be uncertain. Defendants mischaracterize plaintiffs' coal enterprise as the equivalent of a "new, untested business" when, in fact, it had been in operation for two years and had substantial sales and earnings in 1974. The calculations of plaintiffs' experts met the reasonable certainty standard and there was substantial evidence from which the jury could conclude that profits were expected and probable.

■ Moreover, the Court specifically instructed the jury that its award of damages, if any, could not be determined by

mere speculation, but instead must be based on the evidence. (Doc. no. 286, p. 1962). The jury's verdict reflects the determination that damages had been proven; the verdict also indicates that the jury exercised its independent judgment and did not simply accept the damages as presented by plaintiffs.

Although the opinion testimony of Barker and Owens may have been hypothetical or circumstantial, it was nevertheless competent; the testimony sufficiently explained the amount of damages as a matter of just and reasonable inference to warrant the submission of the question to the jury, therefore, JNOV is improper. Further, it was not an abuse of discretion to admit the expert opinion testimony, therefore defendants are not entitled to a new trial on that basis.

2. Judicial Estoppel.

■ Defendants' allegation that certain testimony of both Barker and Owens is barred by judicial estoppel has no merit. The doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding; he is estopped from asserting an inconsistent position in a subsequent proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir.1982). The essential function of judicial estoppel is to prevent intentional inconsistency; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial machinery. *Id.*

■ Defendants' argument has no factual basis in the record. Barker's position and opinion expressed at the second trial concerned a different quality of coal, different terms of sale, and a different time period than those to which he testified in 1981. Barker's pricing assumptions are supported by the evidence admitted and the testimony of several other witnesses, including defense witnesses.

■ Defendants also claim that Owens was improperly inconsistent in his testimony as to his calculations of the financial

results of two separate and distinct professional mining plans. Owens' testimony at the second trial explained the bottom line financial results of the Barker plan; his testimony at the first trial examined the Zegeer plan. There was no illegal inconsistency between the calculations of the net results of the Barker plan and Owens' testimony at the first trial. Owens simply testified that he applied the same accounting principles to two significantly different plans and calculated the outcome.

The testimony of Barker and Owens was not inconsistent and was properly presented to the jury for its examination; the admission of their testimony operated to effectively aid the jury and the Court in the search for the truth rather than to "pervert the integrity of the judicial process" as defendants maintain. Judicial estoppel is inapplicable in this case, therefore defendants are not entitled to a new trial on that basis.

3. Not Evidence of Diligent Mining.

Defendants maintain that plaintiffs' expert testimony was not evidence of what was required to satisfy the diligent mining causes of the leases and, therefore, cannot support a damage award.

Plaintiffs offered substantial evidence to show what was necessary to meet the requirements of diligent mining in the leases and to submit that defendants did not meet those obligations. The testimony of Barker and Owens was significantly related to this inquiry. A review of the record shows that Barker directly testified to the lease requirements and to defendants' performance. The jury's verdict is sufficiently supported by competent and credible evidence, therefore JNOV is improper and defendants are not entitled to a new trial on that basis.

C. *Motion for New Trial Based Upon the Improper Admission Over Objection of Prejudicial Evidence.*

■ Defendants allege that the Court improperly permitted plaintiffs to retry their fraud and oral contract claims by

admitting prejudicial evidence. The Circuit Court, however, remanded the breach of contract claim for retrial and specifically held that extrinsic evidence is admissible on the issue of any assumed leasehold obligations and to explain any term in the acquisition agreement. *Coal Resources,* 756 F.2d at 450–51. This holding is consistent with prior Ohio and Sixth Circuit law.

The Court exercised extreme care in restricting plaintiffs' proof to matters relevant to the lease claims. The evidence to which defendants object bears upon the diligence in mining as well as other issues. . Unfortunately, evidence does not exist in watertight compartments. Evidence which may support a lack of diligence claim by bearing upon the conduct of the parties may also be evidence that would support a fraud claim. This Court is unwilling to deny the plaintiffs the opportunity to present that portion of the case that the Circuit Court ruled they should present on the basis that it is possible to interpret some of the evidence as bearing upon fraud or misrepresentation.

Specifically, the Capital Appropriations Request ("CAR") indicated what investment and development efforts defendants had contemplated with regard to diligently mining the leaseholds; the CAR may be considered as evidence of defendants' knowledge of what was necessary to accomplish that end. Also, the documents transmitted to the National Bank of Detroit which were tied to the production payment transaction may be significant in revealing defendants' internal corporate acknowledgement of what was necessary to diligently mine the property and to rebut defendants' contention that millions were lost on the transaction.

This evidence was properly admitted to demonstrate the terms of the contract as interpreted by the parties and was relevant to the issues which the Circuit Court mandated be retried. It was not an abuse of discretion to admit the evidence, therefore defendants are not entitled to a new trial on that basis.

D. *Motion for New Trial Based Upon the Improper Exclusion of Probative Evidence.*

Defendants argue that the Court improperly excluded probative evidence by 1) excluding defendants' witnesses and evidence and denying defendants the opportunity to present expert opinions, and 2) denying defendants a fair opportunity to cross-examine plaintiffs' experts.

1. Defendants' Witnesses, Evidence and Experts.

Defendants' witnesses and evidence which were outside the scope of the primary issues or which were cumulative were excluded. Inadmissible legal conclusions were properly excluded on both sides.

The Circuit Court mandated that the remand was to focus on the intent of the parties relative to the contract document. This Court carefully allowed the evidence and testimony which was relative to the issue of the parties' understanding of the contract obligations at issue in the second trial. This Court was also mindful of its responsibility to expedite the disposition of the matter and to avoid unnecessary proof and cumulative evidence. Fed.R.Civ.P. 16.

■ Defendants contend that the Court abused its discretion by limiting the number of expert witnesses to two per side. The authority to limit the number of expert witnesses is within the sound discretion of the trial judge. *Id.* The trial judge is permitted wide latitude in guiding a case through its preparatory stages. The Court's decision must not be disturbed unless it is demonstrated that the judge has clearly abused the broad discretionary power vested in him by Rule 16. 3 *Moore's Federal Practice* ¶ 16.13 (2d Ed.1985).

In the interest of justice, limitations on the number of experts permitted to testify were imposed on each party. Defendants had ample opportunity to select its experts and witnesses and to designate additional witnesses so that discovery and trial preparation could be effective and complete. Defendants' voluntary, tactical decisions were

not successful and they cannot now complain of unfair prejudice and judicial error.

 The record shows that defendants had a fair opportunity to present its defense and they were not handicapped or prejudiced by the Court's attempt to require reasonable efficiency and precision in the courtroom in order to conserve scarce judicial resources. It was not an abuse of discretion to exclude irrelevant and cumulative evidence, or to limit the number of experts permitted to testify, therefore defendants are not entitled to a new trial on that basis.

2. Cross-Examination of Plaintiffs' Experts.

 The defendants' allegation that the Court unfairly precluded a full and fair cross-examination of Messrs. Barker and Owens is unsupported by the record and without merit. A significant portion of the trial time was devoted to extensive cross-examinations of these witnesses over a four-day period. The parameters of the cross-examination were properly drawn to exclude cumulative testimony and insignificant exploration of unrelated tangential issues, therefore such limitation is not a basis for new trial.

E. *Motion for New Trial Based Upon the Improper and Prejudicial Jury Argument of Counsel.*

Defendants allege that they were prejudiced by plaintiffs' counsel's improper and inflammatory remarks during closing argument and at trial in that the arguments 1) advanced a theory based on fraud and misrepresentation, and 2) misstated facts and relied upon facts not a part of the record.

1. Fraud and Misrepresentation.

The portions of plaintiffs' counsel's final argument to which defendants object merely argued liability based upon the evidence of the leasehold obligations which were at issue in the second trial. Counsel properly set out the claims at the outset of his argument and never argued nor mentioned fraud or misrepresentation.

 Counsel made fair and reasonable deductions from the evidence admitted and properly stated the inferences and conclusions which he advocated the jury could draw from the testimony and evidence. The argument also properly addressed and rebutted contentions made by defense counsel. The scope of the closing argument is within the Court's discretion. *City of Cleveland v. Peter Kiewit Sons Co.*, 624 F.2d 749, 756 (6th Cir.1980). This Court finds that counsel did not exceed the boundaries of fair argument during his closing remarks or throughout the close of the trial.

2. Misstated Facts and Reliance on Facts Not in the Record.

Likewise, the closing argument made by plaintiffs' counsel in this case did not exceed the legal and practical bounds in its reference to the facts. The jury's verdict was not so significantly influenced by the remarks as to require a new trial in light of the balance of the evidence presented and opposing counsel's equal opportunity to advocate defendants' position. During and at the close of the trial, the Court specifically charged the jury that closing arguments are not evidence. The Court also advised the jury that statements or arguments of counsel not based on the evidence should be disregarded.

 The test whether a party has been deprived of a fair trial because of counsel's alleged misconduct is if "there is a reasonable probability that the verdict of a jury has been influenced by such conduct." *Id.; Merkel v. Scovill, Inc.*, 573 F.Supp. 1055, 1069 (S.D. Ohio 1983). "In making this determination, the trial court must look to the totality of the circumstances, including the nature and frequency of the challenged comments, the possible relevancy to the critical jury questions, the way in which the comments were treated by the parties and the Court, the strength of the case and the verdict itself." *Merkel*, 573 F.Supp. at 1069. Applying this standard, the Court finds that the overall effect of plaintiffs' counsel's com-

ments did not substantially prejudice defendants so that they were deprived of a fair trial.

**F.** *Motion for New Trial Based Upon the Giving of Improper Jury Instructions.*

Defendants allege that the Court's jury instructions require a new trial on the basis that 1) the instructions promote a theory of recovery based on evidence relevant only to fraud or misrepresentation, and 2) the Court refused to give defendants' requested instructions.

1. Fraud and Misrepresentation.

 In Instruction No. 5615, to which defendants object, this Court instructed that the jury could consider the plan or method of development intended by defendants at the time of the lease assignment, together with the intention of the parties in entering into the transaction for purposes of what constituted "diligent mining." This instruction fully comports with the applicable law and was in direct accord with the Circuit Court's mandate. Instruction No. 5615 did not unfairly prejudice the defendants and did not promote a theory of recovery based on evidence relevant only to fraud or misrepresentation.

2. Refusal to Give Defendants' Instructions.

 Likewise, defendants have not been unfairly prejudiced by the Court's denial of specific instructions proffered by defendants. The Court is under no obligation to accept either party's proposed instructions. It is the Court's duty to instruct the jury and in the process, the Court has the prerogative to accept or reject proffered jury instructions. Contrary to defendants' allegations, defendants were not deprived of a fair trial despite the Court's refusal to instruct the jury as requested.

 The jury instructions given in this case fairly and adequately explained all of the issues in the case and it is within the Court's discretion to deny any instruction that may be improperly suggestive or argumentative. Taking into account the cumulative affect, if any, of the alleged errors, defendants were not deprived of a fair trial, and are not entitled to a new trial on that basis. *See Merkel v. Scovill, Inc.,* 573 F.Supp. at 1070.

PREJUDGMENT INTEREST

Following the first trial of this matter, this Court declined to award prejudgment interest at a rate greater than that provided for by the Ohio statute, Ohio Rev.Code § 1343.03, in part because the jury had been instructed that compensation for breach of contract should include "losses necessarily following from the breach of contract and those which reasonably may be supposed to have been within the contemplation of the parties at the time the contract was made." (Doc. 133, p. 4). Plaintiffs had presented evidence that Gulf & Western Industries, Inc. was aware of the interest rate charged by the Central Trust Co. on the outstanding $500,000 Gulf & Western should have paid on June 11, 1977. Arguably, the jury had taken that fact into account in its total award for breach of contract.

 Prior to the second trial, however, Gulf & Western confessed liability for the breach of its contractual obligation to pay $500,000 to the Central Trust Co. on June 11, 1977. This Court awarded, as part of the damages for that breach, the actual interest incurred by plaintiffs on that bank obligation. A confession of judgment or liability is not a common tactic. Under the Federal Rules, the adverse party must accept the offer to confess judgment, or judgment will not enter. Fed.R.Civ.P. 68. In the instant case, the plaintiffs did not accept the offer. Nonetheless, where a defendant is willing to confess liability on a claim, and to offer plaintiff all he could expect to gain from going to trial on that claim, that claim is no longer contested.

The United States Supreme Court has declined to speculate on the correctness of a district court's acceptance of such an offer. *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 337, 100 S.Ct. 1166, 1173, 63 L.Ed.2d 427 (1980). There is also

an equally significant absence of guidance from our parent Circuit. The accepting of defendants' offer of judgment over plaintiffs' protest, however, is not unlike the granting of a contested summary judgment motion. If the defendants are willing to offer all that the plaintiffs could have hoped to obtain by presenting their claim to a jury, no point would be served by requiring a trial on that claim.

An offer of judgment under the federal rule, and on the facts of *Roper,* is only possible where the defendant offers all that the plaintiff can hope to recover. In the instant case, plaintiffs had uncontroverted evidence of the interest rates charged on their obligation to the Central Trust Co. That interest is then an element of the damages which were suffered by plaintiffs as a result of defendants' breach of contract; it was foreseeable and measurable at the time the defendants incurred the obligation. Under these circumstances, interest on the $500,000 obligation is not prejudgment interest limited in amount by the Ohio statute. *See American Anodco, Inc. v. Reynolds Metals Co.,* 743 F.2d 417, 424 (6th Cir.1984). In *Reynolds Metals,* the Sixth Circuit characterized as "specious" the argument that interest incurred ˈon money borrowed as a result of the defendants' breach of contract was prejudgment interest limited by the Michigan statute. *Id.; see also, Banque de Depots v. National Bank of Detroit,* 491 F.2d 753, 757–58 (6th Cir.1974).

█ Upon consideration, this Court finds that defendants' offer of judgment on this claim included all damages to which plaintiffs were entitled and that the actual interest incurred on the obligation must be included in those damages. The Ohio statute is designed to compensate plaintiffs for the loss of use of their money, not to limit their recovery where damages resulting from the defendants' conduct take the form of interest.

By their present Motion, plaintiffs seek an award of prejudgment interest on the jury award of $7,850,000 for defendants' breach of contract. It is settled law in Ohio that statutory prejudgment interest will not be awarded on sums that remain unliquidated until the date of judgment, *Braverman v. Spriggs,* 68 Ohio App.2d 58, 426 N.E.2d 526 (1980), unless the sums are readily ascertainable by certain calculations based upon existing market values. *Royal Crown Plastics Sales, Inc. v. Motorists Mutual Ins. Co.,* 51 Ohio App.2d 79, 366 N.E.2d 294 (1976); *accord Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 140 n. 9 (6th Cir.1983); *Bituminous Casualty Corp. v. Lynn,* 503 F.2d 636 (6th Cir.1974). Accordingly, no award would be possible in this case under the Ohio prejudgment interest statute as it has been interpreted by the Ohio courts.

█ Plaintiffs apparently concede that the damages awarded by the jury are not of the type to justify an award of prejudgment interest under the Ohio statute, as they urge the Court to award interest at the average prime rate in an exercise of its equitable powers. The Court agrees with plaintiffs' contention that a federal district court has the power to award prejudgment interest, even where such interest is not available as a matter of law under the statute, where it is necessary to make the plaintiff whole or to divest the defendant of an ill-begotten gain. *See Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1198 (6th Cir.1974); *Essex House v. St. Paul Fire and Marine Ins. Co.,* 404 F.Supp. 978, 995 (S.D.Ohio 1975); *Avco Corp., v. American Telephone and Telegraph Co.,* 68 F.R.D. 532, 539 (S.D. Ohio 1975). This Court does not agree, however, that this is an appropriate case for the exercise of those equitable powers.

█ First, there were no gains made by the defendants through the breach of their contract with plaintiffs. The crux of the case was the failure to diligently mine the leased properties, not the failure to turn over profits earned. The amount of damages awarded was already uncertain, and to compound that uncertainty by projecting an investment return that defendants could have earned on profits never realized is inequitable. Second, the jury was charged to make the plaintiffs whole for any breach. This Court will not substitute its judgment for that of the jury as to what is

adequate compensation for the damages found to be suffered by the plaintiffs.

Accordingly, to the extent already awarded on the $500,000 obligation to which defendants confessed judgment, plaintiffs' Motion for Prejudgment Interest is **GRANTED.** The Motion is **DENIED,** however, as to the jury award of $7,850,-000.

## CONCLUSION

The remanded trial was conducted in strict accordance with the Sixth Circuit's opinion and no basis has been shown to overturn the jury's verdict or to grant a new trial. Accordingly, defendants' alternative Motions for New Trial and/or for Judgment Notwithstanding the Verdict (doc. no. 264) are hereby **DENIED.** Further, the Court hereby **GRANTS** plaintiffs' Motion for Prejudgment Interest (doc. no. 266) to the extent that it has been awarded on the $500,000 obligation to which defendants confessed judgment, and the Motion is **DENIED** as to the jury award of $7,850,-000.

IT IS SO ORDERED.